# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

CONSUELO HERMAN, et al.,

              Plaintiffs,

     v.                          Case No. 22-CV-200

INTEGRITY PROPERTY AND CASUALTY INSURANCE COMPANY,

              Defendant.

---

## DECISION AND ORDER

---

### 1. Facts and Procedural History

On July 1, 2019, shortly before 5:00 PM, Consuelo Herman[1] was driving south on South 27th Street in Milwaukee when heavy traffic caused her to stop. (ECF No. 23-1 at 2.) She was then rear-ended by a Kia Soul driven by Ana Maria Sepulveda. The impact was significant enough to send Herman's Subaru Crosstrek into the car in front of it but not so severe as to deploy the airbags in the Soul. (ECF No. 23-1 at 1-5.)

Herman did not seek medical treatment that day (ECF No. 26, ¶ 3), but the following day she went to an urgent care clinic (ECF Nos. 23-2; 26, ¶ 4). According to the

---

[1] Consuelo's husband, Richard Herman, is also a plaintiff. Because his claim (ECF No. 1-1 at 4, ¶ 8) is not significant in the court's analysis of the pending motions, the court uses "Herman" herein to refer to Consuelo alone and uses the singular "plaintiff."

medical records, she reported that she had a sore and tender neck, soreness in her hips, stiffness, and pain in her right lower back. (ECF Nos. 23-2; 26, ¶ 4.) She denied any weakness or pain, numbness, or tingling in her extremities. (ECF No. 23-2 at 1.) X-rays of her cervical spine and hip were generally normal. (ECF Nos. 23-2 at 2-3; 26, ¶ 5.) She was prescribed a muscle relaxant for possible muscle spasms and advised to apply cold and warm compresses and to take over-the-counter analgesics for pain. (ECF Nos. 23-2 at 3; 26, ¶ 5.)

Herman later sought care by her primary care physician, completed a course of physical therapy, and underwent an MRI. (ECF No. 26, ¶¶ 6-7.) The lumbar MRI showed degenerative changes—specifically, a mild degenerative disc bulge, facet arthrosis, and ligamentum flavum hypertrophy at L4-5 and L5-S1. (ECF No. 26, ¶ 7.) In March 2021 an x-ray showed "mild sclerosis" in her sacroiliac joint, which Herman's pain management physician opined could be attributable to wear and tear but that the accident may have exacerbated a pre-existing condition. (ECF No. 23-5 at 8, 26:1-7.)

In a report and testimony Herman's treating physician opined that, although he could not rule out that the accident caused her pain, there is a higher probability that her pain is likely chronic in nature. (ECF No. 26, ¶¶ 13-14.)

Herman alleges that she incurred special damages of $14,658.90 in past medical expenses and $554.31 in lost wages for a total of $15,213.21. (ECF No. 26, ¶ 21.) She settled with Sepulveda's insurer for the policy maximum of $25,000 and then turned to the

underinsured motorist provision of her policy with defendant Integrity Property and Casualty Insurance Company. She and her husband filed suit seeking underinsured motorist benefits (ECF No. 1-1, ¶¶ 21-22), interest pursuant to Wis. Stat. § 628.46 (ECF No. 1-1, ¶¶ 24-25), and punitive damages (ECF No. 1-1, ¶ 36), and alleging bad faith (ECF No. 1-1, ¶¶ 27-24). The parties stipulated to "bifurcate the bad faith claim, and that any discovery regarding bad faith should be stayed pending the determination of the other claims." (ECF No. 9 at 4; 10.)

Integrity sought summary judgment with respect to the claim for interest under Wis. Stat. § 628.46. (ECF No. 21.) The court denied the motion, stating:

> In the context of a first-party claim, an insurer cannot avoid having to pay interest under Wis. Stat. § 628.46 merely because it reasonably disputes the amount of an insured's claim. But if the insurer has reasonable proof that an insured's damages do not rise to the threshold at which the policy provides coverage, it is not required to pay interest under Wis. Stat. § 628.46. Integrity has not yet demonstrated that it had reasonable proof that Herman's damages were less than $25,000. Therefore, it is not entitled to summary judgment regarding Herman's claim for interest under Wis. Stat. § 628.46.

*Herman v. Integrity Prop. & Cas. Ins. Co.*, No. 22-CV-200, 2022 U.S. Dist. LEXIS 228400, at *12-13 (E.D. Wis. Dec. 19, 2022).

Then, consistent with the parties' stipulation, the court held a scheduling conference and set a schedule related to discovery on the bad faith claim. (ECF Nos. 37; 38.) Roughly a month later Herman filed a motion to compel and for sanctions. (ECF No. 41.)

In conjunction with its response Integrity filed a motion for a protective order and for *in camera* review. (ECF No. 46.) Herman has replied (ECF No. 51), and the motion to compel is ready for resolution.

All parties have consented to the full jurisdiction of this court in accordance with 28 U.S.C. § 636(c). (ECF Nos. 5, 6.) The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

## 2. Bad Faith Discovery Generally

A claim of bad faith often opens the door to invasive discovery including, under certain circumstances, an insurer's work product and materials otherwise protected by the attorney/client privilege. *See Brethorst v. Allstate Prop. & Cas. Ins. Co.*, 2011 WI 41, ¶75, 334 Wis. 2d 23, 54, 798 N.W.2d 467, 483 (discussing *Dahmen v. Am. Family Mut. Ins. Co.*, 2001 WI App 198, 247 Wis. 2d 541, 549, 635 N.W.2d 1, 5). To protect against invasive fishing expeditions founded on specious claims of bad faith, an "insured may not proceed with discovery on a first-party bad faith claim until it has pleaded a breach of contract by the insurer as part of a separate bad faith claim and satisfied the court that the insured has established such a breach or will be able to prove such a breach in the future." *Id.* at ¶76 (emphasis omitted). "The insurer, in turn, must be permitted to challenge the elements of the claim, not only by a responsive pleading, but also by motion. It must be permitted to show that it did not breach the contract or that there was a reasonable basis for its conduct in denying, paying, or processing a claim." *Id.* at ¶77. The court in *Brethorst*

referred to an insured's obligation to present "prima facie evidence," *id*. at ¶80 (quoting *Farmers Auto. Ins. Ass'n v. Union Pac. Ry. Co.*, 2009 WI 73, ¶52, 319 Wis. 2d 52, 768 N.W.2d 596), and "to make a preliminary showing on bad faith," *id*. at ¶81, but did not elaborate as to what that might entail beyond adequately pleading a breach of contract claim and satisfying the court that it will be able to prove such a claim in the future.

Seizing on the statement that an insured must "satisf[y] the court that the insured has established such a breach or will be able to prove such a breach in the future," *id*. at ¶76, Integrity reads *Brethorst* as imposing on an insured the affirmative obligation to prove to the court that her breach of contract claim is viable before she is permitted discovery regarding her bad faith claim. Because the court has not made a specific ruling that Herman has met this standard, Integrity contends she is not entitled to the discovery she demands. (ECF No. 44 at 8.)

*Brethorst* is more limited than Integrity contends. It does not impose a duty on an insured to affirmatively prove that her breach of contract claim is viable before being permitted discovery on a bad faith claim.[2] Rather, *Brethorst* provides an insurer a means of foreclosing bad faith discovery when it can show that the requisite breach of contract claim fails. "To go forward in discovery, [the plaintiff's] allegations must withstand the insurer's rebuttal." *Brethorst*, 2011 WI 41, ¶76. The insured's obligation to satisfy the court

---

[2] Integrity does not suggest how an insured is to seek such a judicial finding or how such a motion would be consistent with the Federal Rules of Civil Procedure.

that she will be able to prove a breach of contract claim arises only if challenged by the insurer either in a motion to dismiss or a motion for summary judgment. *See id.* at ¶79. If the insured survives the insurer's challenge or, as it relevant here, the insurer does not challenge the insurer's breach of contract claim in a motion to dismiss or for summary judgment, the insured is entitled to discovery regarding her bad faith claim as a matter of course. *Id.* at ¶76.

Consistent with *Brethorst*, and as stipulated by the parties in their joint Rule 26(f) report (ECF No. 9), the court bifurcated the pretrial proceedings regarding Herman's breach of contract and bad faith claims and set a deadline for Integrity to seek summary judgment on Herman's breach of contract claim. (ECF No. 13.) Integrity sought summary judgment but, rather than broadly challenging Herman's breach of contract claim, it challenged only Herman's claim for interest. As referenced above, the court denied Integrity's motion, *Herman*, 2022 U.S. Dist. LEXIS 228400, which ended the first phase of the bifurcated pretrial proceedings.

At a subsequent scheduling conference the parties indicated that they agreed to allow for six months of discovery on the bad faith claim, and the court set a schedule consistent with their agreement. (ECF No. 37 at 2.) At no point did Integrity suggest that it believed the scope of bad faith discovery was somehow limited or that Herman needed to make some sort of additional showing before she was entitled to unlock the full scope of discovery on her bad faith claim.

Insofar as Integrity is now arguing that the evidence is insufficient to support a claim of bad faith, the argument is both untimely and not properly raised in response to a motion to compel. The time to raise such an argument was in a motion for summary judgment, and that deadline passed on October 15, 2022. (ECF No. 13.) Integrity having foregone its pretrial opportunity to challenge Herman's breach of contract claim, Herman is entitled to the full scope of discovery regarding her bad faith claim. Thus, the court turns to the specifics of Herman's requests and the appropriate scope of discovery regarding a bad faith claim.

### 3. Herman's Motion to Compel

"Bad faith litigation can be complex and the stakes are often high. Discovery has become the main battleground." *2 New Appleman Insurance Bad Faith Litigation § 16.03*[6][a].

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).[3]

As summarized by Herman, she seeks the following information:

---

[3] The parties repeatedly refer to the superseded "reasonably calculated to lead to the discovery of relevant information" standard. (ECF No. 42 at 3, 4, 22 (quoting Integrity's discovery responses), 5, 16, 18, 24).

1. The full claim and litigation files developed by Integrity in response to the Hermans' claim, including all "reserve" information;

2. The identity of all individuals involved in the processing of the Hermans' claim;

3. All policies, procedures and guidelines developed by Integrity with respect to the processing of claims for Uninsured and Underinsured Motorist benefits under policies issued in Wisconsin, including those which reflect the setting of claim reserves;

4. All training materials relating to the processing of UM and UIM claims under policies issued in Wisconsin; [and]

5. The identities of all individuals "most knowledgeable" about the policies and procedures and training concerning the processing of claims for UM and UIM benefits under policies issued in Wisconsin.

(ECF No. 42 at 2.)

As to each request Integrity offered virtually identical objections:

Objection. Integrity objects to the form of this (Interrogatory/Request). Further, Integrity objects as this (interrogatory/request) seeks information that is not reasonably calculated to lead to the discovery of relevant information. Further object as this (interrogatory/request) is overly broad, unduly burdensome, and vague. Specifically, the term "most knowledgeable" is vague and ambiguous and subject to more than one interpretation. In addition, the Federal Rules of Civil Procedure do not require the identification of a person "most knowledgeable." Further object as it is precluded by the decision in *Brethorst v. Allstate Property and Cas. Ins. Co.*, 2011 WI 41, ¶¶ 71-80, 334 Wis.2d 23, 53-56, 798 N.W.2d 467. Finally, object as it requests protected commercially sensitive, confidential and proprietary information.

(ECF No. 42 at 3.) It further objected to Herman's requests on the grounds that they

sought information covered by the attorney/client privilege and work product doctrine,

sought trade secrets, and were "not reasonably calculated to lead to the discovery of relevant information."

### 3.1.Reserve

Wisconsin, like most states, requires an insurer to set aside reserves to cover its liabilities and ensure its solvency. Wis. Stat. § 623.21; *Gronik v. Balthasar*, No. 10-CV-954, 2013 U.S. Dist. LEXIS 138349, at *13 (E.D. Wis. Sep. 24, 2013); *2 New Appleman Insurance Bad Faith Litigation § 16.03*[6][g][i]. "Reserves, which are sometimes described as loss reserves, are funds held by an insurer to pay claims for losses that have occurred but have not been resolved." Douglas R. Richmond, *Recurring Discovery Issues in Insurance Bad Faith Litigation,* 52 Tort Trial & Ins. Prac. J. 749, 766 (2017); *see also Metro. Life Ins. Co. v. Ogandzhanova*, No. CV-12-372-PHX-GMS, 2013 U.S. Dist. LEXIS 50918, at *3 (D. Ariz. Apr. 9, 2013) ("In an insurance context, the term 'reserve' refers to 'a fund of money set aside by a bank or an insurance company to cover future liabilities.'" (quoting *Black's Law Dictionary* (9th ed. 2009)). The reserve assigned to a specific claim is referred to as a "case reserve[]." Richmond, 52 Tort Trial & Ins. Prac. J. at 766.

> Insureds regularly seek discovery of reserve information. The asserted purpose is to learn the insurer's opinion of the value of a claim, and to see if its conduct was consistent with that opinion. For example, if an insurer sets a high reserve and then denies the claim, the plaintiff will contend the inconsistency is evidence of bad faith. If the reserve is low on a claim where liability is certain and the insured has suffered substantial damages, the plaintiff will argue that the insurer ignored the evidence and intended to force an unreasonably low settlement.

2 *New Appleman Insurance Bad Faith Litigation* § 16.03[6][g][i]; *see also* Richmond, 52 Tort

Trial & Ins. Prac. J. at 767–68. Because it may provide a glimpse into the insurer's view of

the value of the insured's claim, reserve information may "appear[] relevant on its face."

*Ogandzhanova*, 2013 U.S. Dist. LEXIS 50918, at *4. For that reason some courts have found

the reserve amount discoverable in the context of a bad faith claim. *See, e.g.*, *United States*

*Fire Ins. Co. v. Bunge N. Am., Inc.*, 244 F.R.D. 638, 644-45 (D. Kan. 2007) (discussing *Savoy*

*v. Richard A. Carrier Trucking, Inc.*, 176 F.R.D. 10 (D. Mass. 1997); *North River Ins. Co. v.*

*Greater New York Mut. Ins. Co.*, 872 F. Supp. 1411 (E.D. Pa. 1995); citing *Bernstein v. Travelers*

*Ins. Co.*, 447 F. Supp. 2d 1100, 1106 (N.D. Cal. 2006); *Nicholas v. Bituminous Cas. Corp.*, 235

F.R.D. 325, 331 (N.D. W. Va. 2006)).

But a reserve amount is not necessarily an insurer's assessment of what a claim is

worth. *See, e.g.*, Richmond, 52 Tort Trial & Ins. Prac. J. at 766–67.

> For example, reserve amounts may be calculated based on the maximum
> possible exposure without regard for the strength of liability defenses or
> coverage defenses, they may or may not include claim expenses and
> attorneys' fees, and they may or may not be adjusted for inflation over the
> expected time until payout. A reserve figure may not be based on a
> thorough factual or legal analysis of a case or claim. An insurer may
> calculate a reserve based on data determined by its actuaries from multi-
> year studies and limited claim profile information, without analyzing the
> claim's factual and legal merit.

*Id.*; *see also Heights at Issaquah Ridge Owners Ass'n v. Steadfast Ins. Co.*, No. C07-1045RSM,

2007 U.S. Dist. LEXIS 95213, at *6-7 (W.D. Wash. Dec. 13, 2007) ("The setting of reserve

amounts may be an accounting decision, made by claims personnel with no knowledge

of the particulars of the insured's actual policies") (citing *Leksi, Inc. v. Federal Insurance Co.*, 129 F.R.D. 99, 106 (D.N.J. 1989)); *Grange Mut. Ins. Co. v. Trude*, 151 S.W.3d 803, 813 (Ky. 2004) ("Reserve setting procedures are controlled in part by statute."); *In re Couch*, 80 B.R. 512, 517 (S.D. Cal. 1987) ("The legislature and Insurance Commissioner establish reserve policy. For this reason alone, a reserve cannot accurately or fairly be equated with an admission of liability or the value of any particular claim.").

Some courts have said that the methodology used to set the reserve affects only the ultimate probative value of the reserve figure; it does not mean that the reserve figure is not discoverable. *Bunge N. Am.,* 244 F.R.D. at 645 (citing *Bernstein*, 447 F. Supp. 2d at 1105; *Nicholas*, 235 F.R.D. at 331). The insurer remains free to argue at trial that the reserve figure is irrelevant under Rule 403 but the insured gets to see the figure. *Bunge N. Am.,* 244 F.R.D. at 645.

Other courts and commentators have found that the method by which the reserve is calculated to be central to the relevance, and thus discoverability, of the reserve amount. *Ogandzhanova*, 2013 U.S. Dist. LEXIS 50918, at *4 ("Central to the relevance (or lack thereof) of reserve information in a given case is the method of calculation.") (citing *Leksi*, 129 F.R.D. at 106); *Bunge N. Am.,* 244 F.R.D. at 644; *Bernstein*, 447 F. Supp. 2d at 1106; *2 New Appleman Insurance Bad Faith Litigation § 16.03*[6][g][i]. "In short, when calculation of the reserve amount 'entails an evaluation based upon a thorough factual consideration', the information will be relevant, and vice versa. *Ogandzhanova*, 2013 U.S.

Dist. LEXIS 50918, at *6 (quoting *Gen. Elec. Capital Corp. v. DIRECTV, Inc.*, 184 F.R.D. 32, 35 (D. Conn. 1998) (brackets and ellipses omitted)).

Because the burden is on the insurer to show that the insured's request for reserve information is improper, *see EEOC v. Klockner H & K Machs.*, 168 F.R.D. 233, 235 (E.D. Wis. 1996), the insurer may defeat the insured's motion to compel by presenting evidence that, given the manner in which the insurer calculates the reserve, the reserve amount is not relevant. *Ogandzhanova*, 2013 U.S. Dist. LEXIS 50918, at *6-*7. However, Integrity has refused to disclose (to Herman or to the court) *any* information related to the reserve amount, including details about how it calculates the figure.

"[I]n light of the fact that the method of calculation is central to determination of the significance (if any) of information about the reserves themselves, information about the methodologies for calculating reserves is discoverable." *2 New Appleman Insurance Bad Faith Litigation § 16.03*[6][g][i] (citing *Trude*, 151 S.W.3d at 813). Therefore, the court will grant Herman's motion to compel with respect how Integrity calculated the reserve amount, except anything that is properly privileged or subject to work product protection. The court rejects any contention that the calculation of the reserve amount is inherently protected or privileged. The applicability of the privilege or work product protection depends on the method of calculation.

The court will defer ruling on Herman's motion to compel disclosure of the reserve amount itself. If discovery regarding Integrity's methodology for calculating the reserve

amount demonstrates that the reserve amount is relevant by, for example, demonstrating that Integrity calculated its reserve amount based on a fact specific assessment of what it believed to be the value of Herman's claim, Herman may file a supplemental brief in support of her motion to compel. Briefing shall then proceed in accordance with Civil Local Rule 7.

### 3.2. Discovery Regarding Post-Litigation Conduct

The privilege log produced by Integrity frequently identifies "post litigation information" as the basis for withholding certain information. (ECF No. 41-11.) It argues that a request for post-litigation information

> is illogical and would gut the sanctity of an insurer's reliance on its counsel's advice to defend a lawsuit. It would also expose the combined protected work product of an insurer and its counsel. To allow discovery of the mental process and litigation strategy of a party would allow the other party an extremely unfair advantage of knowing what their opponent will argue during the course of litigation.

(ECF No. 44 at 24.) It argues that disclosing post-litigation information would allow the plaintiff "to know Integrity's strategy in defending the UIM claim while continuing to litigate the unresolved claim." (ECF No. 44 at 24.) "[A]ll conduct in a pending case is necessarily informed by attorney advice and guidance, which is to remain confidential." (ECF No. 44 at 25.)

The attorney client privilege and work product protection do not necessarily bar discovery of everything an insurer does after an insured files suit against it. Nor are an insurer's actions in defending a bad faith claim within the scope of Wisconsin's litigation

privilege. Wisconsin has recognized the privilege as extending only to claims of defamation. *See Bergman v. Hupy*, 64 Wis. 2d 747, 749–50, 221 N.W.2d 898, 900 (1974); *Rady v. Lutz*, 150 Wis. 2d 643, 648, 444 N.W.2d 58, 59 (Ct. App. 1989). A bad faith claim is not sufficiently analogous to a defamation claim that the privilege should be extended to encompass all conduct by an insurance company following an insured filing suit. *But cf. Dorfman v. Smith*, 342 Conn. 582, 611, 271 A.3d 53, 74 (2022). To hold that post-litigation conduct is outside the scope of a bad faith claim would be inconsistent with the Wisconsin Supreme Court's holding that an insurer's "duty of good faith and fair dealing exists at *all times* …." *Danner v. Auto-Owners Ins.*, 2001 WI 90, ¶57, 245 Wis. 2d 49, 629 N.W.2d 159 (emphasis added); *see also Doermer v. Callen*, 847 F.3d 522, 527 (7th Cir. 2017) (stating that federal courts must resolve questions of state law how the state's highest court likely would resolve the question).

But, conversely, a claim of bad faith does not vitiate the attorney client privilege or work product protection. An insured alleging bad faith is not automatically entitled to discover everything an insurer does after a case is filed or all the thoughts, impressions, or strategies of personnel involved in the defense of the insured's suit. An insurer is entitled to litigate and vigorously defend itself in the manner of any other litigant, with all the attendant privileges and protections. *See*, *e.g.*, *Timberlake Constr. Co. v. United States Fid. & Guar. Co.*, 71 F.3d 335, 341 (10th Cir. 1995). The Federal Rules and the inherent power of the court to rein in any potential misconduct of an insurer apply the same as to

any other litigant. *See, e.g.*, Fed. R. Civ. P. 11. Thus, while the insurer's entitlement to a full and vigorous defense is not as broad and categorical as the litigation privilege, in general, conduct within the appropriate scope of litigation will not support a claim of bad faith. The ongoing duty of good faith inherent in the insurance contract means only that, if the insured's claim ceases to be fairly debatable during the litigation, the insurer must satisfy the claim. *1 New Appleman Insurance Bad Faith Litigation § 5.09*[1] (citing cases).

In sum, the court rejects Integrity's "post-litigation information" objection to Herman's discovery demands. "Post-litigation information" is not, in itself, a proper basis for withholding discovery. However, Integrity retains all the rights and privileges to a vigorous defense, including the ability to rely on all privileges and protections with respect to Herman's discovery demands. Therefore, it may well be that all discovery withheld on the basis that it is post-litigation information is properly withheld on other bases. But Integrity must properly invoke the privilege or protection, and so the court turns to the question of whether Integrity has sustained its burden to show that the information that Herman demands is privileged or otherwise protected from disclosure.

### 3.3. Attorney Client Privilege / Work Product Protection

When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

(i) expressly make the claim; and

(ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without

revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)

Integrity contends that Herman's motion to compel regarding Integrity's invocation of the attorney client privilege is not properly before the court because Herman did not address the privilege in the parties' meet and confer. The court rejects that contention. Herman adequately raised the issue of privilege and work product in the emails that constituted the parties' meet and confer. (ECF Nos. 41-12 at 6-7; *see also* 41-12 at 6-7, 10; 41-13 at 1.)

Turning to Integrity's privilege log (ECF No. 41-11), it invoked the attorney client privilege six times: with regard to redactions on pages Bates stamped 157, 158, 253, 267, 286, and 287; and again with respect to three pages Bates stamped 814-816, which it withheld in their entirety, that it described as "Attorney – Client Communications."

Contrary to Rule 26(b)(5)(ii), Integrity failed describe the nature of the withheld documents "in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." It simply baldly asserted "attorney-client privilege." While it sometimes may be difficult to walk the line between providing enough information to enable the court to assess the privilege and not disclosing the privileged material, *Wier v. United Airlines, Inc.*, No. 19 CV 7000, 2021 U.S. Dist. LEXIS 73397, at *16 (N.D. Ill. Apr. 16, 2021) (quoting *Washtenaw Cty. Emples. Ret. Sys. v. Walgreen Co.*, No. 15 C 3187, 2020 U.S. Dist. LEXIS 123756, at *10 (N.D. Ill. July 14, 2020)),

a bald assertion of the privilege is clearly insufficient, *Washtenaw Cty. Emples. Ret. Sys.*, 2020 U.S. Dist. LEXIS 123756, at *11 ("Descriptions that use the word 'privilege' as a label, while saying nothing about what the communication was about or what it related to, are unacceptable."); *cf. RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 218 (N.D. Ill. 2013) (finding "Document containing non-responsive and privileged analysis re loan facilities including NBB based in part on and reflecting advice of counsel," to be "vague and generic" and insufficient to allow the court to assess the "claim of privilege as required by Rule 26(b)(5)"). Although such specificity is required only if the withheld information is "otherwise discoverable," *i.e.*, it is not subject to withholding on some other basis, which the court must resolve first, *see United States v. Philip Morris, Inc.*, 358 U.S. App. D.C. 226, 229, 347 F.3d 951, 954 (2003), Integrity does not argue that, aside from the objections that must be set forth in a log under Rule 26(b)(5)(ii), the redacted information is not "otherwise discoverable."

Perhaps recognizing that its privilege log was woefully lacking, in conjunction with its response to Herman's motion to compel Integrity filed a motion asking the court to conduct an *in camera* review of the documents it withheld. (ECF No. 46; *see also* ECF No. 44 at 16, fn. 3.) In effect, Integrity wants to skip its obligation to produce a complete privilege log and go straight to having the court review the documents.

"A party is not automatically entitled to an *in camera* review." *Billy Goat IP LLC v. Billy Goat Chip Co. LLC*, No. 17-CV-9154, 2019 U.S. Dist. LEXIS 233218, at *10 (N.D. Ill. Feb.

1, 2019) (citing *United States v. Zolin*, 491 U.S. 554, 571 (1989)). Although such reviews may have become a common means to resolve questions of attorney client privilege, they are not the default. *Wier*, 2021 U.S. Dist. LEXIS 73397, at *44. While an *in camera* review may be preferable to disclosing the information to the opposing party, courts must be mindful that an *in camera* review itself intrudes on the attorney client privilege (although this concern is obviously diminished when it is the holder of the privilege seeking the review). Moreover, *in camera* review burdens the judiciary with discovery matters that are intended to be resolved by the parties.

The expectation under Rule 26(b)(5) is that the withholding party's explanation on the privilege log as to why documents are being withheld in whole or in part will be sufficient to enable the court to assess the claim that no further production is required. If it is not possible to provide a complete explanation without revealing the privileged information, then an *in camera* review may be appropriate. Because Integrity has failed to comply with Rule 26(b)(5), it has not shown that an *in camera* review is needed. But neither has Herman shown that the claim of privilege is unfounded or otherwise must yield.

Therefore, the court defers resolution of Herman's motion to compel disclosure of information withheld on the basis of the attorney client privilege. Within 21 days of the date of this decision, Integrity must provide a complete privilege log that complies with Rule 26(b)(5). If, following review of Integrity's revised privilege log, Herman concludes that it is appropriate to proceed with her motion to compel, she may file a renewed brief

in support of her motion to compel. Briefing shall then proceed in accordance with Civil Local Rule 7.

For the same reasons, the court reaches the same conclusion with respect to Integrity's claim of work product protection. Integrity shall produce a complete log consistent with Rule 26(b)(5) within 21 days of the date of this decision.

### 3.4. Identification of "Most Knowledgeable" Person

In various interrogatories Herman asks Integrity to identify the person "most knowledgeable" of certain facts. (ECF No. 41-2, Interrogatory Nos. 3, 4, 5, 8, 9, 10.) Integrity objected on the basis that the term "most knowledgeable" is vague and ambiguous and not supported by the Federal Rules of Civil Procedure.

Herman explains that she asked Integrity to identify the person "most knowledgeable" "to avoid unproductive depositions." (ECF No. 42 at 22.) "[I]f there is more than one such person, Integrity should provide those identities." (ECF No. 42 at 23.) She notes that she could require Integrity to identify persons under Fed. R. Civ. P. 30(b)(6), but argues she is "not required to employ that procedure …." (ECF No. 42 at 23.)

Herman's demand that Integrity identify the person or persons "most knowledgeable" as to specific topics is unsupported by the Federal Rules and unworkable. The use of the superlative "most" makes the designation highly subjective. Herman's contention that the question may call for Integrity to designate more than one person "most knowledgeable" is inconsistent with the definition of "most"; there can be

only one person who is most knowledgeable. If Herman is simply attempting to identify persons knowledgeable about certain facts, she should say so.

Although Herman points to cases where courts referred to an interrogatory seeking the identification of a "most knowledgeable" person, in none of these cases did the court consider the argument that a demand for the "most knowledgeable" person was vague and unfounded on the Federal Rules. *See, e.g.*, *Marroy v. Aisin Mfg. Ill. LLC*, No. 20-cv-972-DWD, 2021 U.S. Dist. LEXIS 131729, at *5 (S.D. Ill. July 15, 2021) (no discussion); *Alfaro v. City of San Diego*, No. 3:17-cv-00046-H-KSC, 2018 U.S. Dist. LEXIS 163512 (S.D. Cal. Sep. 21, 2018) (same); *Hawranek v. Haier Us Appliance Sols.*, No. 1:17-cv-03347-TWP-MPB, 2018 U.S. Dist. LEXIS 233269, at *1 (S.D. Ind. Sep. 4, 2018) (same); *Nautilus Ins. Co. v. Raatz*, No. 08 c 6182, 2011 U.S. Dist. LEXIS 2931 (N.D. Ill. Jan. 12, 2011) (same); *Lynch v. Air Transp.*, No. 09-C-994, 2010 U.S. Dist. LEXIS 138143, at *9 (E.D. Wis. Dec. 17, 2010) (same); *Ala. Dep't of Conservation v. Warren Alloy Valve & Fitting Co.*, Civil Action No. 08-00326-KD-B, 2009 U.S. Dist. LEXIS 150737 (S.D. Ala. June 16, 2009) (same).

The case that comes closest to offering a substantive discussion of the propriety of an interrogatory seeking the "most knowledgeable" person simply highlights a fundamental problem with Herman's request. In *Carrigan v. K2M, Inc.*, the plaintiff sought leave to take an out-of-time deposition on the ground that the person the defendant identified was not actually the *most* knowledgeable. *Carrigan v. K2M, Inc.*, No. 09-CV-3149, 2011 U.S. Dist. LEXIS 50015, at *4 (C.D. Ill. May 10, 2011). One person, even

the person who has the most knowledge on a particular subject, might not be able to answer every question that a party may have. That is why Rule 30(b)(6) requires the noticing party to "describe with reasonable particularity the matters for examination." An organization need not identify the person most knowledgeable on any topic but must designate a person who is merely competent to testify regarding the particular subject matter and whose answers will bind the organization.

Herman has failed to demonstrate that her demand for an identification of the person "most knowledgeable" of a certain topic is an appropriate request. Therefore, her motion to compel is denied with respect to her interrogatories seeking Integrity to identify a "most knowledgeable" person.

### 4. Conclusion

Integrity was given the opportunity to challenge the sufficiency of Herman's breach of contract claim. It did not do so. Having survived the contract phase of the pretrial proceedings, Herman is entitled to discovery on her bad faith claim. That discovery may include details regarding Integrity's case reserve. But whether the reserve amount is relevant depends on how Integrity calculates its case reserve. Therefore, as a first step, Herman's motion is granted only with respect to discovery as to how Integrity calculated its cash reserve. The court defers resolution of Herman's motion to compel discovery of the reserve amount.

21

The court likewise defers resolution of Herman's motion to compel as to matters Integrity withheld on the basis that it was "post-litigation information." Post-litigation information is not a proper objection or basis for withholding discovery regarding an insured's bad faith claim against an insurer. But the information withheld on the basis that it was post-litigation information may nonetheless prove to be properly withheld for another reason, such as it is covered by the attorney client privilege or is entitled to work product protection. Before the court can assess any claim of privilege or protection, Integrity must first properly invoke it in accordance with Rule 26(b)(5)(ii). Integrity having failed to do so, the court defers resolution of Herman's motion to compel with respect to matters withheld on the basis of attorney client privilege or work product.

Herman's motion to compel is denied with respect to her demand that Integrity identify the person "most knowledgeable" as to certain topics. Integrity is not entitled to a protective order and has failed to demonstrate that *in camera* review is needed.

**IT IS THEREFORE ORDERED** that Herman's motion to compel (ECF No. 41) is granted with respect to discovery regarding Integrity's method for setting its case reserve amount. The motion is denied with respect to Herman's demand that Integrity identify persons "most knowledgeable." In all other respects the court defers resolution. Within **21 days** of the date of this order Integrity shall provide to Herman a log that complies with Rule 26(b)(5)(ii). If the parties remain unable to resolve their dispute following a further meet-and-confer in accordance with Civil Local Rule 37, Herman may file a

supplemental brief addressing any unresolved issue. Briefing shall then proceed in accordance with Civil Local Rule 7. The Clerk shall terminate the motion to compel and for sanctions (ECF No. 41) for administrative purposes.

**IT IS FURTHER ORDERED** that Integrity's motion for a protective order and for *in camera* review (ECF No. 46) is **denied**.

**IT IS FURTHER ORDERED** that Integrity's motion to seal (ECF No. 43) is **granted** and the document filed as ECF No. 43-2 is sealed.

**IT IS FURTHER ORDERED** that Herman's motion for sanctions (ECF No. 41) is denied without prejudice. The court otherwise finds that, at this time, neither party is entitled to reasonable expenses related to the motions. *See* Fed. R. Civ. 37(a)(5)(C).

Dated at Milwaukee, Wisconsin this 29th day of June, 2023.

WILLIAM E. DUFFIN
U.S. Magistrate Judge